UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Minnesota Energy, Inc.,

Plaintiff,

v.

Civ. No. 01-1058 (JEL/JGL)
ORDER

Ronning Engineering Company, Inc.,

Defendant and Third-Party
Plaintiff,

v.

PBBS Equipment, Corp. and
Par Piping and Fabrication, Inc.,

Third-Party Defendants.

---

Peter D. Favorite, Esq., Gislason & Hunter LLP, appeared for Plaintiff Minnesota Energy, Inc.

Lisa R. Griebel, Esq., Terhaar, Archibald, Pfefferle & Griebel, LLP, appeared for Defendant and Third-Party Plaintiff Ronning Engineering Company, Inc.

Bradley J. Lindeman, Esq., Meagher & Geer, P.L.L.P., appeared for Third-Party Defendant PBBS Equipment, Corp.

Joel M. Muscoplat, Esq., Gislason, Martin & Varpness, P.A., appeared for Third-Party Defendant Par Piping and Fabrication, Inc.

---

This action arises from a fire that occurred at Minnesota Energy, Inc.'s (Minnesota Energy) ethanol plant in November 1998. In May 2001, Minnesota Energy sued the designer of the plant's boiler stack heat recovery system, Ronning Engineering Company, Inc. (Ronning), claiming that the fire was caused by the defective design and installation of the system. The matter comes before the Court on Ronning's Motion for Summary Judgment. At issue is whether Minnesota Energy's action is barred by Minnesota's two-year statute of limitations for

FILED OCT 10 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED OCT 1 [illegible]
DEPUTY CLERK'S INITIALS

actions arising out of the defective and unsafe condition of improvements to real property, Minn. Stat. § 541.051, subd. 1(a) (2000). The Court concludes that it is.

## SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1), 1441(a) (2000).

## BACKGROUND

Minnesota Energy operated an ethanol plant in Buffalo Lake, Minnesota, that produced fuel-grade ethanol by fermenting and distilling alcohol from corn. (Johansen Aff. ¶¶ 1-2; Johansen Dep. at 18.) After distillation, the corn was dried in a large, cylindrical, steel drum dryer, creating an animal feed product known as dried distiller's grain with solubles (DDGS). (Johansen Aff. ¶¶ 3-4; Johansen Dep. at 18-19).

In 1995, Minnesota Energy hired Ronning to assist in the design of the plant's dehydration system. (Ronning Aff. ¶ 3.) Ronning designed the plant's boiler stack heat recovery system. (Johansen Aff. ¶ 7; Johansen Dep. at 28; Ronning Aff. ¶ 3.) It also designed the plant's screw conveyor system, centrifugal separator, blending chamber, and a modification to the drum dryer. (Ronning Aff. ¶ 6.)

On November 6, 1998, a fire broke out in the dryer drum during the commissioning, or start-up, of one of the plant's boilers. (Griebel Aff., Ex. D.) Within 24 hours, the general manager of Minnesota Energy concluded that the fire was caused by defects in the boiler stack heat recovery system. (Johansen Dep. at 70-72.) An engineering company hired to investigate the fire reached the same conclusion in a written report dated January 4, 1999. (Griebel Aff., Ex. D; Gronvall Aff., Ex. D.)

On May 8, 2001, Minnesota Energy commenced this action against Ronning in Minnesota state court, alleging negligence, strict liability, and breach of contract. (Compl.) The Complaint alleges that the November 6, 1998, fire was caused by Ronning's improper design and installation of the boiler stack heat recovery system.[1] (*Id.* ¶¶ 5-6.) Ronning removed the action to this Court pursuant to 28 U.S.C. § 1446 (2000). In March 2002, Ronning brought third-party complaints against PBBS Equipment Corp. (PBBS), whose employee had commissioned the boiler on the day of the fire, and Par Piping and Fabrication, Inc. (Par Piping), the company that manufactured, fabricated, and installed the boiler stack heat recovery system. Ronning now moves for summary judgment, arguing that Minnesota Energy's action is barred by Minn. Stat. § 541.051, subd. 1(a).

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When the evidence in the record demonstrates that an action is barred by the applicable statute of limitations, summary judgment should be granted for the defendant. *See Am. Spirit Graphics Corp. v. Toshiba Mach. Co., Ltd.*, 27 F.3d 353, 355 (8th Cir. 1994) (affirming summary judgment for defendant when plaintiff's claim was barred by Minn. Stat. § 541.051); *Moen v. Rexnord, Inc.*, 659 F. Supp. 988, 990 (D. Minn. 1987) (granting summary judgment for defendant when plaintiff's claim was barred by Minn. Stat. § 541.051).

---

[1] Minnesota Energy's Complaint also seeks to recover damages resulting from an explosion that occurred in December 1998. In its Memorandum in Opposition to Ronning's Motion for Summary Judgment and at the hearing on Ronning's motion, Minnesota Energy represented that it was no longer pursuing any claims related to the December 1998 explosion. (Plaint.'s Mem. Opp. Summ. J. at 5-6 n.2.)

Under Minn. Stat. § 541.051, subd. 1(a), actions against a designer of "an improvement to real property" that arise out of the defective or unsafe condition of the improvement must be brought no more than two years after the injury is discovered.[2] There is no dispute in this case that Minnesota Energy brought its action against Ronning more than two years after it discovered its injury. The issue presented is whether the action involves "an improvement to real property" within the meaning of the statute.

In *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn. 1977), the Minnesota Supreme Court adopted a "common-sense interpretation" of the phrase "improvement to real property," defining it as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Id.* at 554. Ronning argues that the boiler stack heat recovery system was a component of the dehydration system, and that the dehydration system as a whole falls squarely within this definition. Minnesota Energy concedes that the dehydration system is an improvement to real property. It argues, however, that the boiler stack heat recovery system was separate and distinct from the

2 The full text of section 541.051, subdivision 1(a), is as follows:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury or, in the case of an action for contribution or indemnity, accrual of the cause of action, nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.

dehydration system, and that, standing alone, the boiler stack heat recovery system is not an improvement to real property.

The evidentiary material submitted by the parties supports Ronning's position that the boiler stack heat recovery system was a component of the dehydration system. It is undisputed that Minnesota Energy hired Ronning for the purpose of designing a dehydration system for its ethanol plant (Ronning Aff. ¶ 3), and that Ronning designed the boiler stack heat recovery system (Johansen Aff. ¶ 7; Ronning Aff. ¶ 3; Ronning Aff. (Second) ¶¶ 3-4). There is nothing in the record to suggest that Minnesota Energy ever hired Ronning to perform additional duties that would require it to design systems or equipment that were separate and distinct from the dehydration system. Furthermore, Ronning's original design drawing of the dehydration system included the boiler stack heat recovery system. (*Id.* ¶ 3, Ex. A.) The deposition testimony of Minnesota Energy's general manager, Joe Johansen, indicates that Ronning submitted its design for the boiler stack heat recovery system as part of its design of the dehydration system. (Johansen Dep. at 28-29.) In sum, the evidence in the record demonstrates that Ronning designed the boiler stack heat recovery system as a component of the dehydration system.

The evidence also shows that the boiler stack heat recovery system functioned as a component of the dehydration system. The boiler stack heat recovery system consisted of approximately 54 feet of ductwork attached to the top of the plant's boilers by scrolls or diverters. (Johansen Aff. ¶ 10; Ronning Aff. ¶ 7.) From the boilers, the ductwork ran along the ceiling, through a wall, and into a blending chamber. (Johansen Aff. ¶ 10; Ronning Aff. ¶ 8; Ronning Aff. (Second), Ex. A.) The boiler stack heat recovery system reduced Minnesota Energy's energy costs by diverting hot air produced by the boilers into the blending chamber, where it was combined with hot air produced by an attached furnace and then blown into the

dryer drum in which the distilled corn was stored and dried. (Johansen Aff. ¶ 8; Johansen Dep. at 25, 131; Ronning Aff. ¶ 10.) The hot air diverted by the boiler stack heat recovery system provided 17.4% of the dehydration system's energy requirements during the summer months and 20% of its energy requirements during the winter months, saving Minnesota Energy approximately $96,000 to $114,000 in energy costs per year. (Ronning Aff. ¶¶ 10-11.) It appears from these facts that the primary, if not the sole, function of the boiler stack heat recovery system was to enhance the efficiency of the dehydration system.

Minnesota Energy contends that the boiler stack heat recovery system was not a component of the dehydration system because the dehydration system can be operated without it. It notes that the dehydration system was operating before the boiler stack heat recovery system was installed (Johansen Aff. ¶¶ 7-8, 14), and that the dehydration system continued to operate after the boiler stack heat recovery system was removed following the November 1998 fire (*id.* ¶ 15). Minnesota law does not require that a component be necessary to the functioning of the system as a whole. *See Farnham v. Nasby Agri-Systems, Inc.*, 437 N.W.2d 759, 761-62 (Minn. Ct. App. 1989). In *Farnham*, the Minnesota Court of Appeals held that a removable grate was part of an underground grain auger system for purposes of section 541.051. 437 N.W.2d at 762. The grate consisted of several metal pipes placed horizontally over the opening of the auger. *Id.* at 760. The grate was normally kept in place to protect workers, but it could be removed to gain access to the auger and to allow some types of grain to flow more easily into the auger. *Id.* at 760-61. Although the grate made the auger system safer, it was not necessary to the auger system's operation.

Relying on language in *Farnham*, Minnesota Energy also argues that the boiler stack heat recovery system should not be viewed as a component of the dehydration system because it was

not a "critical part" of the dehydration system. The plaintiff in *Farnham* cited *Massie v. City of Duluth*, 425 N.W.2d 858 (Minn. Ct. App. 1988), in support of its position that the grate was not an improvement to real property. *Farnham*, 437 N.W.2d at 761. The court of appeals distinguished *Massie*, stating:

> [*Massie*] held that an outdoor recreational water slide adjacent to a swimming pool was not an improvement to real property within the meaning of Minn. Stat. § 541.051. In that case, the water slide was used only during the summer season and placed in storage for the off-season. A water slide is merely incidental to a swimming pool and is not crucial to the functioning of the pool. However, in the present case, the grate was a critical part of the auger system, permitting the inflow of grain while protecting workers.

*Farnham*, 437 N.W.2d at 761-62. It is evident from this passage that *Farnham* construed *Massie* as involving the question of whether the water slide was a part of a swimming pool. A close reading of *Massie*, however, reveals that the water slide was attached to a shallow lake at the Twin Ponds Recreation Area in Duluth, rather than a swimming pool. 425 N.W.2d at 859. Thus, the issue in *Massie* was whether the water slide, standing alone, was an improvement to real property. *Id.* at 860.

Because *Farnham*'s description of the grate as a "critical part" of the auger system was made as a means of distinguishing what turns out to be a hypothetical factual scenario involving a water slide and a swimming pool, the Court questions whether *Farnham* should be read as adopting a rule that only critical parts of a system are components of that system for purposes of section 541.051. Nevertheless, even if *Farnham* is read as creating such a rule, the Court concludes that the boiler stack heat recovery system at issue in this case was at least as critical to the dehydration system as the grate was to the auger system in *Farnham*. Based on these considerations, the Court concludes that the boiler stack heat recovery system was a component of the dehydration system.

Again, Minnesota Energy concedes that the dehydration system as a whole is an improvement to real property. Cases interpreting section 541.051 establish that, in determining whether a defective item is an improvement to real property, there is no distinction between the component parts of a system and the system as a whole. *See Kemp v. Allis-Chalmers Corp.*, 390 N.W.2d 848, 851 (Minn. Ct. App. 1986) ("The distinction between portions of the whole and the whole itself has never been used in Minnesota for the purpose of determining whether the unit is an improvement to real property."); *Moen*, 659 F. Supp. at 990 (following *Kemp* on this point). Thus, following *Kemp* and *Moen*, the Court concludes that the boiler stack heat recovery system, a component of an improvement to real property, must also be considered an improvement to real property.

Because Minnesota Energy's action arises from the defective condition of an improvement to real property, it is governed by the two-year statute of limitations set forth in section 541.051, subdivision 1(a). Minnesota Energy did not bring its action against Ronning within this period of limitation, and Ronning is therefore entitled to a judgment as a matter of law. *See Am. Spirit Graphics*, 27 F.3d at 355; *Moen*, 659 F. Supp. at 990.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED THAT:

1. Defendant Ronning's Motion for Summary Judgment [Docket No. 34] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 10, 2002

JOAN ERICKSEN LANCASTER
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*